# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MURRAY TALLMAN, | ) | 1:08cv01794 DLB |
| | ) | |
| | ) | |
| | ) | ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) | SOCIAL SECURITY COMPLAINT |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## BACKGROUND

Plaintiff Murray Tallman ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed his initial application on November 5, 2004, alleging disability since September 21, 1991, due to crushed bones in his right foot.[2] AR 74-77, 83-88. After his

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[2] At the hearing, Plaintiff amended the onset date to October 4, 2006, his 50th birthday. AR 316.

1

application was denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 38-42, 45-49, 50. ALJ Eve Godfrey held a hearing on April 21, 2008, and denied benefits on July 22, 2008. AR 9-19, 312-334. On October 29, 2008, the Appeals Council denied review. AR 4-7.

Plaintiff filed previous applications for disability benefits, which were denied at the hearing level on October 26, 2004. This Court affirmed the Commissioner's decision and entered judgment on April 20, 2006. AR 12, 25-30.

Hearing Testimony

ALJ Godfrey held a hearing on April 21, 2008, in Bakersfield, California. Plaintiff appeared with his attorney, Young Cho. Vocational expert ("VE") John Kilcher also appeared and testified. AR 312.

During the hearing, Plaintiff's attorney argued that the ALJ should adopt the prior ALJ's finding that Plaintiff was limited to sedentary exertion. AR 317. He argued that although there was no opinion limiting him to sedentary exertion in the instant claim, res judicata requires that the limitation be adopted because there were no changed circumstances. AR 317.

When questioned by the ALJ, Plaintiff testified that he previously worked as a trash collector's helper and sprinkler head inspector. AR 327. He also worked as a "pipe picker." AR 329.

The VE testified that a person who could perform light work could return to Plaintiff's past work as a sprinkler head examiner. AR 331. This person could also perform the positions of small products assembler, nut and bolt packer and garment sorter. AR 331.

If this person needed to have an opportunity to sit down, he could still perform the assembler position, though it would be eroded by about 60 percent. AR 332. The positions of parking lot attendant and cashier would also be available. AR 332.

Medical Record

In 1991, Plaintiff broke his right ankle and underwent surgery to repair the break with internal hardware. AR 150. His right ankle has been persistently painful since the surgery. AR 172.

In August 2004, Plaintiff's treating physician, Nadim Sarkies, M.D., wrote a letter indicating that Plaintiff has a permanent disability based on his 1991 injury to his right foot. Dr. Sarkies noted that Plaintiff was diagnosed with a fractured, deformed right foot. AR 189.

In December 2004, Plaintiff underwent surgery to remove painful hardware in his right[3] foot and repair the foot. AR 148, 284.

X-rays of Plaintiff's right foot dated January 5, 2005, revealed postoperative changes and degenerative changes of the right talonavicular joint. AR 278.

On February 19, 2005, Plaintiff saw Porter McRoberts, M.D., for a consultive orthopedic examination. Plaintiff complained that he could not run because he had a screw in his foot. Plaintiff reported that his foot was injured in 1991 when it was run over by a garbage truck. He had a screw placed at that time and was pain free until recently. Plaintiff was in a walking cast after his December 2004 surgery. He explained that he could not work because he could not run and "any job out there would result in keeping my leg elevated, which would be painful." Plaintiff reported that he could walk about 10 feet, though he was able to walk about 300-400 feet from the parking lot to the doctor's office. He said he could climb two flights of stairs, which he admitted was more than 10 feet. He reported he could sit for about five minutes and could stand for about three minutes. AR 192-193.

On examination, Plaintiff was in no apparent distress and displayed ease in ambulation, dexterity and climbing off and on the examination table. He was able to sit for 30 minutes without any apparent discomfort. His gait was an-antalgic and he had a limp on the right secondary to use of the cane with the cast. His examination was essentially normal, though range of motion and strength testing were not performed on the right foot. Dr. McRoberts diagnosed Plaintiff with status-post re-instrumentation and replacement of right foot screw, unknown location. Based on Plaintiff's current condition, Dr. McRoberts believed that he could stand and/or walk for four hours and could sit without limitation. His cane seemed medically necessary at that time. Plaintiff could lift and carry 30 pounds frequently and 10 occasionally. Dr.

---

[3] Plaintiff indicates that the reporter erroneously described the foot as his left foot, when in fact the surgery involved his right foot. The medical evidence supports this conclusion.

3

McRoberts stressed that his assessment was for Plaintiff's current situation, which was dynamic and expected to change at his next appointment. AR 194-199.

X-rays of Plaintiff's right foot taken on February 22, 2005, revealed fusion of the right talonavicular joint with a surgical pin across the joint space, compression at the lateral portion of the right navicula, and degenerative changes and fusion of the joint spaces in the right navicula and the right cuneiforms. There was no significant change of the right foot as compared to the January 5, 2005, x-ray. AR 268.

Plaintiff saw Laura Parker, P.A., on March 29, 2005. He reported that his foot was "quite painful," and he walked with a limp and a cane. On examination, there was no tenderness to palpation over the pin site, though there was mild edema with no eccymosis. She reviewed x-rays taken the same day and noted that they showed excellent position of the fracture with evidence of fusion. AR 132. The x-rays also showed diffuse osteopenia. AR 133.

In April 2005, Plaintiff underwent a CT scan of his right foot. The scan showed chronic deformity and loss of normal architecture of the tarsal bones, the navicular bone and the talonavicular joint. There were multiple small osseous fragments about the talonavicular joint, which was otherwise deformed and involved with advanced degenerative disease. There was non-unification of the fusion attempt. The scan also revealed soft tissue swelling. AR 131.

On June 21, 2005, State Agency physician Carmen DeLaRosa, M.D., completed a Residual Functional Capacity Assessment form. Dr. DeLaRosa opined that Plaintiff could occasionally lift 50 pounds, 25 pounds frequently, stand and/or walk for about six hours and sit for about six hours. He had to avoid repetitive use of foot controls with his right lower extremity and could occasionally climb. Plaintiff had to avoid concentrated exposure to hazards, such as prolonged walking over uneven terrain. AR 200-207.

A July 2005 x-ray of Plaintiff's right foot showed post-operative changes of arthrodesis and osteopenia. The surgical hardware was in the same position and bone alignment showed no appreciable change since the March 2005 x-ray. AR 125.

Treatment notes from July 19, 2005, indicate that Plaintiff rated his pain level at 10, though he described his pain as "mild." AR 261.

In December 2005, a State Agency physician completed another Residual Functional Capacity Assessment form. The doctor opined that Plaintiff could occasionally lift 20 pounds, 10 pounds frequently, stand and/or walk for about six hours and sit for about six hours. He could occasionally climb, crouch and crawl. The doctor noted that "talonavicular fractures are tough ones" and almost always have residual pain. The doctor recommended a light residual functional capacity ("RFC"). AR 210-219.

In April and August 2006, Plaintiff told Dr. Sarkies that his right foot still hurt. He was not given pain medication. AR 255, 257.

Between December 2006 and December 2007, Plaintiff saw Dr. Sarkies for nine check-up appointments. In May 2007, he complained of persistent right foot pain. AR 244. During this period, he was prescribed medication for high-blood pressure. AR 241-251.

On May 26, 2007, Plaintiff saw Doojin Kim, M.D., for a consultive orthopedic examination. Plaintiff explained that he suffered an injury to his right foot in 1991 and underwent surgery. He had no problems until 2004 and underwent surgery to replace a screw. Plaintiff reported that the surgery did not help with the pain and he has a constant, throbbing pain that he rated as a 10 out of 10. He has never taken pain medication, had an injection or participated in physical therapy. Plaintiff further reported that when he uses his cane, there is no limit to how far he can walk or how long he can stand. AR 228-229.

Plaintiff was able to ambulate to the examination room with the aide of a cane, though he had a limp on the right side. He had no problem getting on and off the examination table. Dr. Kim found the examination to be "inconsistent" because Plaintiff would not give full effort when testing strength, especially in the right ankle. The examination was also inconsistent because when Plaintiff did not have his cane, he would "scream out in excruciating pain and his entire right lower extremity would buckle," but when he had his cane, he was able to place weight on his right extremity and walk with only a slight limp. AR 230. Dr. Kim did not believe that the cane was medically necessary. AR 231.

Dr. Kim concluded that Plaintiff had a visible deformity of the right ankle. There was no edema, swelling or erythema around the ankle joint and there was no pain to palpation. He

diagnosed a right ankle fracture, status post right ankle surgery and chronic right ankle pain. Dr. Kim noted that the only objective finding was the visual deformity, and the degree of injury should not give him the type of pain that is "vastly relieved with using a single-point cane." Based on the examination, Dr. Kim opined that Plaintiff could stand and walk for six hours and sit without restriction. He did not need an assistive device. Plaintiff could lift and carry 25 pounds frequently, 50 pounds occasionally. He had no further restrictions. AR 232.

Plaintiff returned to Dr. Kim on June 11, 2008, for a second orthopedic consultive examination. He reported that the December 2004 surgery made his pain worse and rated his current pain at a 10 out of 10. He reported that when he walks without his cane, he has pain and falls over. AR 292.

Dr. Kim found that Plaintiff's examination and interview were inconsistent in that Plaintiff claimed his pain was a 10 out of 10 yet he seemed calm and in no distress. AR 293. There was no elevation of his pulse or blood pressure. AR 295. Plaintiff was also inconsistent because when he ambulated, he was able to walk fine with the cane in his right hand being placed down next to his right foot. When he tried to walk without the cane, however, every time he took a step he yelled out in pain and his right knee would buckle, though he would not fall. Dr. Kim did not believe the cane was medically necessary. AR 294. His knee buckling seemed to be more of a "voluntary movement" because he could catch himself with his knee bent at 45 degrees. AR 294.

Dr. Kim explained that Plaintiff had only minor findings, i.e., reconfiguration of his normal foot architecture, loss of the arch of the right foot and hypercalcification changes. There was no evidence of inflammation, erythema or edema. He also had full range of motion of the right foot and seemed to have good functioning of the right foot. Dr. Kim opined that Plaintiff could stand and walk for six hours and sit without restriction. He could lift and carry 50 pounds frequently, 100 pounds occasionally. He had no further limitations. AR 295-296. /

X-rays taken on June 11, 2008, showed arthrodesis, mid foot to hind foot, with no acute findings. AR 297.

ALJ's Findings

Prior to discussing the merits of Plaintiff's current claim, the ALJ noted that Plaintiff filed previous applications in April 2003. On October 26, 2004, ALJ James P. Berry found that Plaintiff could perform sedentary work and was not disabled. AR 12. The ALJ then explained that under *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988), the presumption of continuing nondisability did not apply because of changed circumstances. Specifically, the evidence supported a higher residual functional capacity ("RFC") than that found by ALJ Berry. AR 12-13.

After analyzing the current evidence, the ALJ found that Plaintiff had the severe impairment of status post ankle fusion surgery of the right talonavicular joint in December 2004, with postoperative arthritis of the right foot. AR 15. The ALJ further found that Plaintiff retained the RFC for light work and could perform a significant number of jobs in the national economy. AR 16-17.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

substantial evidence. See *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" (status post ankle fusion surgery of the right talonavicular joint in December 2004, with postoperative arthritis of the right foot) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform his past relevant work; but (5) retains the RFC to perform a significant number of light jobs. AR 15-19.

Here, Plaintiff argues that the ALJ erred n not adopting the prior sedentary RFC.

## DISCUSSION

Plaintiff contends that the ALJ's finding of changed circumstances was not supported by substantial evidence. He therefore argues that the RFC finding of sedentary exertion in the prior decision is entitled to res judicata. Had the ALJ found that Plaintiff was limited to sedentary

exertion, Plaintiff contends he would have been disabled under Medical Vocational Guideline 201.12.

The principles of res judicata apply to administrative proceedings. *Lyle v. Sec. Health & Human Serv.*, 700 F.2d 566, 568, n. 2 (9th Cir. 1983). A previous finding that a claimant is not disabled creates a presumption of continuing nondisability. *Miller v. Heckler*, 770 F.2d 845, 848 (9th Cir. 1985). An ALJ's finding of nondisability creates "a presumption that [the claimant] continued to be able to work after that date." *Id.* To overcome this presumption, the claimant must prove "changed circumstances" indicating a greater disability. *Chavez v. Bowen*, 844 F.3d 691, 693 (9th Cir. 1988); Acquiescence Ruling ("AR") 97-4(9). For example, a change in age status after the first determination is a changed circumstance sufficient to rebut the presumption of continuing nondisability. *Chavez,* 844 F.3d at 693. Changed circumstances also include an increase in the severity of the claimant's impairment, the alleged existence of a new impairment, or a change in the criteria for determining disability. AR 97-4(9).

However, even where the claimant is able to overcome the presumption of disability, certain of the prior findings are entitled to some res judicata consideration. Prior determinations of RFC, education and work experience are entitled to res judicata absent new and material evidence on the issue. *Chavez,* 844 F.2d at 694. "Adjudicators must adopt such a finding from the final decision on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding." AR 97-4(9).

Plaintiff's *Chavez* argument is the reverse of the one ordinarily advanced by petitioners. Generally, a claimant argues changed circumstances to rebut the presumptions in hopes of avoiding the application of res judicata to the prior ALJ's RFC finding. Indeed, claimants usually contend that their impairments have worsened so as to support a lower RFC. Here, however, Plaintiff argued at the administrative hearing that res judicata *should* apply to the prior ALJ's sedentary RFC finding. Specifically, he argued that there were no changes in Plaintiff's condition since the prior decision so that the sedentary RFC finding would apply. Given Plaintiff's age (51)

9

at the time of the hearing and assuming a sedentary RFC, Plaintiff argued that he would be disabled under the Medical Vocational Guidelines. AR 317.

Though he didn't articulate his argument well, if at all, at the hearing, Plaintiff's opening brief suggests that he believes that he overcame the presumption of continuing nondisability by his change in age category. Plaintiff is correct- his age category changed from "younger individual" to "closely approaching advanced age" between the two decisions, and this change in age category is a changed circumstance sufficient to overcome the presumption of continuing nondisability. 20 C.F.R. § 404.1563(c) and (d).

The ALJ did not discuss the change in age. Instead, he essentially put the burden of showing changed circumstances on himself and determined that the medical evidence supports a higher RFC. While a higher RFC is not necessarily a changed circumstance, had the ALJ found changed circumstances through the change in age category, she would have undertaken the same analysis of Plaintiff's RFC.[4]

Specifically, having found a changed circumstance, the ALJ would have been required to give res judicata effect to certain findings, including the sedentary RFC, **absent new and material evidence on the issue.** *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008) (prior ALJ's RFC findings cannot be reconsidered by a subsequent judge "absent new information not presented to the first judge."); *Chavez*, 844 F.2d at 694; AR 97-4(9). So although the ALJ may not have used the correct terminology, she conducted the same analysis. In other words, it is clear from the ALJ's decision that although he called the medical evidence "changed circumstances," she considered it to be new and material evidence relating to Plaintiff's RFC. This makes any error in terminology harmless, though the Court must now determine whether the ALJ's finding of new and material evidence to warrant a departure from the sedentary RFC is supported by substantial evidence.

---

[4] The burden of demonstrating changed circumstances is with the claimant, and is it not clear if Plaintiff carried this burden at the hearing. Plaintiff did argue that he had now turned 50, however, and when combined with the objective nature of the inquiry, the ALJ should have addressed it in the manner now explained by the Court.

10

Here, all evidence related to Plaintiff's RFC dated after the first hearing, October 26, 2004, is new and material evidence that this ALJ was entitled to consider. *Stubbs-Danielson*, 539 F.3d at 1173 ("The entirety of the medical evaluations presented with respect to the present application were conducted after Stubbs-Danielson's 1984 initial disability determination. These evaluations necessarily presented new and material information not presented to the first ALJ."). Plaintiff argues that even though the evidence may be new and material, there continues to be no change from the circumstances leading to the prior RFC finding. That the new evidence is similar, however, acts to strengthen the current medical opinions and further supports the ALJ's questioning of Plaintiff's credibility.

In reviewing Plaintiff's new medical evidence, the ALJ began with Plaintiff's December 2004 surgery to remove hardware in his right foot and re-fuse the joint. AR 15. Although Plaintiff required a cast and cane to ambulate for a period of time after his surgery, as of February 2005, his weight bearing capacity was expected to change in a month. AR 15, 194-199. The ALJ also cited February 2005 x-rays that showed fusion of the right talonavicular joint and degenerative changes. AR 15, 268. X-rays taken on June 11, 2008, showed arthrodesis, mid foot to hind foot, with no acute findings. AR 15, 297. To the extent that Plaintiff compares evidence with the evidence before the prior ALJ and suggests that it shows no change, the ALJ was still permitted to consider it anew as it was not presented to the prior ALJ and is material to the RFC finding.

The ALJ discussed a majority of the new and material medical evidence within the context of discussing Plaintiff's credibility. For example, at Plaintiff's most recent examination, Dr. Kim found only minor findings, i.e., reconfiguration of his normal foot architecture, loss of the arch of the right foot and hypercalcification changes. There was no evidence of inflammation, erythema or edema. He also had full range of motion of the right foot and seemed to have good functioning of the right foot. AR 16, 295-296. The ALJ may rely on objective medical evidence in assessing a claimant's credibility. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ next explained that Plaintiff was not taking *any* pain medications. AR 16. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (evidence of "conservative treatment," such as a claimant's use of only over-the-counter pain medication, is sufficient to discount a claimant's testimony regarding severity of an impairment). Similarly, there was no evidence of disuse or muscle atrophy, nor was there evidence of sleep disturbance or cognitive deficits due to pain. AR 16. Again, to the extent Plaintiff suggests that this presents no difference when compared to the prior decision, the ALJ is nevertheless entitled to consider it as new and material evidence.

The ALJ then moved on to a detailed discussion of the new evidence of Plaintiff's exaggeration of his symptoms. During his May 2007 consultive examination with Dr. Kim, Plaintiff complained of constant pain at a level of 10 out of 10, yet he appeared calm and in no acute distress. AR 16, 230-231. Dr. Kim also found the examination to be "inconsistent" because Plaintiff would not give full effort when testing strength, especially in the right ankle. AR 16. The examination was also inconsistent because when Plaintiff did not have his cane, he would "scream out in excruciating pain and his entire right lower extremity would buckle," but when he had his cane, he was able to place weight on his right extremity and walk with only a slight limp. Dr. Kim did not believe that the cane was medically necessary, explaining that the degree of injury should not give him the type of pain that is "vastly relieved with using a single-point cane." AR 16, 230-232.

Similarly, during the 2008 examination, Dr. Kim noted that Plaintiff claimed his pain was a 10 out of 10 yet he seemed calm and in no distress. AR 293. He was also inconsistent because when he ambulated, he was able to walk fine with the cane in his right hand being placed down next to his right foot. When he tried to walk without the cane, however, every time he took a step he yelled out in pain and his right knee would buckle, though he would not fall. Dr. Kim did not believe the cane was medically necessary. AR 294. His knee buckling seemed to be more of a "voluntary movement" because he could catch himself with his knee bent at 45 degrees. AR 16, 294.

The ALJ properly considered this evidence, as it was new and material evidence related to Plaintiff's functional abilities. Certainly such evidence supports a finding that Plaintiff was

exaggerating his symptoms and was not as limited as he alleged. The ALJ may use "ordinary techniques" in addressing credibility, *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), and may make inferences "logically flowing from the evidence." *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996).

In addition to the above medical evidence, the ALJ examined Plaintiff's reports of daily activities. For example, the ALJ noted that Plaintiff lives alone, does household chores, washes dishes, cooks, drives and shops. AR 16. The ALJ is entitled to rely on Plaintiff's daily activities in assessing credibility. *Morgan v. Commissioner of Social Sec. Admin.,* 169 F.3d 595, 600 (9th Cir. 1999). Plaintiff does not dispute this, but argues the "performance of a few activities of daily living" is not inconsistent with the ability to do sedentary work. Opening Brief, 12. Notwithstanding the fact that the ALJ was entitled to rely on the new evidence, his activities can hardly be characterized as "a few activities of daily living." Plaintiff lives on his own and performs *all* activities by himself.

Finally, the ALJ explained that he gave significant weight to Dr. Kim's 2007 and 2008 examinations to the extent that Dr. Kim's opinions reflect a finding that Plaintiff could perform light work:

> His opinion of the claimant's functional ability is based on his thorough and detailed exams that show improvement in the claimant's clinical findings. Exams show that while the claimant has lost the arches of his right foot, has deformity of the malleolus and has degenerative changes in the naviculo-talar joint, there is no edema, swelling or erythema around the ankle joint. There is no pain to palpation. He has full range of motion of the joint. There are no neurological deficits except for 4-/5 right dorsiflexion and plantar flexion that may be likely secondary to poor effort.

AR 17. Plaintiff does not challenge this finding.

Based on the above, the Court finds that the ALJ's discussion of new and material evidence supported a finding that Plaintiff retained an RFC for light work. The finding was supported by substantial evidence and was free of legal error.

# **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Murray Tallman.

IT IS SO ORDERED.

Dated: **January 27, 2010**        **/s/ Dennis L. Beck**
                                    UNITED STATES MAGISTRATE JUDGE